UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| **Gary Colyer,** | ) | **Civil Action No. 6:10-cv-00175-GFVT** |
| | ) | |
| Plaintiff | ) | |
| | ) | **Judge Gregory F. Van Tatenhove** |
| v. | ) | |
| | ) | |
| **Traveler's Insurance Company, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT THE TRAVELERS INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Comes now, Defendant Travelers Indemnity Company, by counsel, and respectfully moves this Court to grant it summary judgment under Fed. R. Civ. P. 56, and deny Plaintiff Gary Colyer's Motion for Summary Judgment and dismiss his claims as a matter of law.  As explained below, the grounds for this Motion are that: (1) this Court does not have subject-matter jurisdiction to hear Colyer's claims under the *Rooker-Feldman* doctrine; (2) Travelers had no duty to raise any statutory exemptions or defenses on Colyer's behalf to a garnishment order issued in state court; (3) the garnishment was paid in accordance with a valid court order, which is a complete defense to Colyer's claims; and (4) Colyer's claims are barred because he seeks an impermissible double recovery under Kentucky law.

# INTRODUCTION

Plaintiff Gary Colyer brings this suit to recover annuity payments under a structured settlement agreement that he alleges The Travelers Indemnity Company ("Travelers") and Metropolitan Life Insurance Company of Connecticut ("MetLife") breached by failing to pay the payments in accordance with the agreement.[1]  Travelers, however, was the recipient of multiple garnishment orders entered against Colyer by Kentucky state courts as a result of his scheme to leave a former business partner and former Kentucky Governor fully accountable for a failed business venture.  The garnishment orders required annuity payments to be paid to Colyer's former business partner, Governor Julian Carroll, and a law firm that represented Colyer in litigation against Carroll.  Colyer effectively asks that this Court exercise appellate review over a state court garnishment order and hold that Travelers failed a supposed mandatory duty to raise statutory exemptions and defenses to that garnishment order, although Kentucky law imposed no such obligation on Travelers.

Under Kentucky law, Colyer is responsible for contesting the validity of the garnishment orders entered against him.  While conceding that point, he now seeks to impose liability against Travelers for its compliance with the state court garnishment order, which he did not appeal.  He further seeks the dual benefit of a judgment against Travelers, in addition to satisfaction of the garnishment order, even though such double recoveries defy common sense and run afoul of Kentucky public policy.

---

[1] The Travelers Indemnity Company is incorrectly identified as "Traveler's Indemnity Company" in the Second Amended Complaint and as "Traveler's Insurance Company" in the initial Complaint.

## BACKGROUND

*The Walk N Vision failure.*   In 1988, Gary Colyer approached former Kentucky Governor Julian Carroll about a potential lucrative business opportunity.[2]  The idea: to create and market software that would permit shopping malls to engage in video advertising to their customers.[3]  Carroll liked the idea, and agreed to provide financial and legal support.[4]  Colyer, on the other hand, would supervise sales and marketing of the software.[5]  Together, Colyer and Carroll decided to incorporate Walk N Vision, Inc. to promote the video advertising software.[6]

Colyer and Carroll later contacted a Frankfort, Kentucky bank to secure financing for Walk N Vision.[7]  In a meeting with a loan officer at the bank, Colyer and Carroll presented their business plan.  Each would guarantee half of any corporate debt.[8]  During the meeting, Colyer also offered an equity interest in his Tennessee condo as collateral for any loan.[9]  The bank thereafter agreed to provide financing for Walk N Vision.[10]  The bank agreed for two reasons. First, the bank had a longstanding business relationship with Carroll.[11]  Second, Colyer demonstrated that he could offer enough collateral to cover the value of the loan.[12]  Based primarily on Colyer's representations, the bank extended a line of credit of over $100,000 to Walk N Vision.[13]

---

[2] Findings, Conclusions of Law, and Judgment, *Carroll v. Colyer*, Franklin Circuit Court, Civil Action No. 93-CI-00039 (Fran. Cir. Ct. Jan. 14, 1993) ("Circuit Court Opinion II"), Sept. 26, 1994, attached as Exhibit A, pp. 1-2.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* at 2-4.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

Carroll signed nine promissory notes in his individual capacity guaranteeing Walk N Vision's debt.[14]  Within six months, Walk N Vision had a corporate debt of $102,500.00.[15] Because of Walk N Vision's growing debt, Carroll requested that Colyer sign a note guaranteeing that he would be responsible for half of the debt.[16]  Colyer signed the note, but later left Frankfort.[17]  Walk N Vision failed four months later, leaving Carroll fully responsible for the corporation's total debt of $158,782.56.[18]  After a demand from the bank, Carroll satisfied the entire debt using personal funds.[19]  Colyer, however, did not make a single payment or contribution towards the debt.[20]

*The structured settlement agreement and annuity.*  On November 9, 1990, Colyer was injured in an automobile accident.[21]  Colyer filed suit against the other driver and his insurer, Travelers, in federal court.[22]  The parties agreed to settle the case under a structured settlement agreement.[23]  Under the agreement, Colyer would receive $1,000 per month for a maximum of 30 years.[24]  To fund the settlement, Travelers purchased an annuity from Travelers Life and Annuity Company.[25]  Payments from the annuity to Colyer began in January 1993.[26]

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] Second Amended Complaint, at ¶ 9, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Dec. 16, 2011 [DN 42].

[22] *Id.* at ¶ 8.

[23] *Id.* at ¶ 9.

[24] *Id.*

[25] Travelers Life and Annuity Company was the annuity issuer until MetLife purchased and merged with Travelers Life and Annuity on June 30, 2005.  *See* MetLife's Motion to Set Aside Entry of Default Judgment By Clerk ("Motion to Set Aside"), *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Dec. 20, 2010 [DN 20], p. 2; *see also* Defendant The Travelers Indemnity Company's Responses to Plaintiff's First Set of Interrogatories and Requests for the Production of Documents, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT

A month after Colyer began receiving payments from the annuity, Carroll sued Colyer in Franklin Circuit Court seeking damages for half of Walk N Vision's debt.[27]   Colyer failed to respond in the lawsuit.[28]   The circuit court entered a default judgment against Colyer on February 17, 1993.[29]   To satisfy the judgment, Carroll filed for a writ of garnishment against Colyer's annuity payments.  Travelers Life and Annuity Company (now MetLife) received a garnishment order from the Franklin Circuit Court on March 5, 1993.[30]   The amount due under the garnishment was $81,747.48 plus ten percent interest per annum.[31]

The circuit court later set aside that default judgment on May 26, 1993, and held a trial on the merits.[32]   At trial, Colyer denied that he agreed to be partially responsible for Walk N Vision's debt.  He further testified that he did not sign any note guaranteeing half of the corporation's debt.[33]   But Carroll presented evidence contradicting Colyer's testimony.[34]   The evidence also established that Colyer made several false statements to the bank to secure funding for Walk N Vision, which included statements about his supposed Tennessee condo.[35]   The Franklin Circuit Court entered judgment for Carroll, granting him $79,391.28 in damages with

---

(E.D. Ky. Jun. 26, 2010), Jan. 23, 2012, attached Exhibit B.  Because Travelers Life and Annuity no longer exists, this Motion will refer to MetLife as the annuity issuer.

[26] Second Amended Complaint, at ¶ 10.

[27] Findings, Conclusions of Law, and Judgment, *Carroll v. Colyer*, Franklin Circuit Court, Civil Action No. 93-CI-00039 (Fran. Cir. Ct. Jan 14, 1993) ("Circuit Court Opinion I"), May 26, 1993, attached as Exhibit C, p. 1.

[28] *Id*. at 1-2.

[29] *Id*. at 2.

[30] Order of Garnishment, *Carroll v. Colyer*, Franklin Circuit Court, Civil Action No. 93-CI-00039, (Fran. Cir. Ct. Jan. 14, 1993), Mar. 5, 1993, attached as Exhibit D.

[31] *Id*.

[32] Circuit Court Opinion I, p. 5.

[33] Circuit Court Opinion II, p. 3.

[34] *Id*. at 2.

[35] *Id*.

interest.[36]  The garnishment order entered as a result of the Franklin Circuit Court's judgment is the sole garnishment order at issue in this case.

   ***The garnishment orders***.  To again satisfy the Franklin Circuit Court's judgment against Colyer, Carroll filed for a new writ of garnishment against Colyer's annuity payments.[37]  The circuit court issued a garnishment order and served MetLife on August 22, 1995.[38]  The amount due under the garnishment was $79,391.28 plus ten percent interest per annum.[39]  MetLife thereafter began paying Carroll annuity payments of $1,000 in compliance with the circuit court's order.[40]

   Although only the Franklin Circuit Court's garnishment order is at issue in this case, garnishment of the annuity in question did not end there.  MetLife received another garnishment order concerning the annuity.  This garnishment, issued by the Jefferson Circuit Court on May 15, 1995, was for Greenbaum Treitz Brown & Marshall, the law firm that represented Colyer in the Carroll litigation.[41]  The garnishment to Greenbaum Treitz was for $10,042.73, plus ten percent interest per annum.[42]  The total of the Carroll and Greenbaum Treitz garnishments, excluding interest, was $89,434.01.[43]  MetLife, in accordance with the Jefferson Circuit Court's garnishment order, also began paying the Greenbaum Treitz garnishment.[44]

---

[36] *Id*. at 5-6.
[37] Second Amended Complaint, at ¶ 16.
[38] Order of Garnishment, *Carroll v. Colyer*, Franklin Circuit Court, Civil Action No. 93-CI-00039, (Fran. Cir. Ct. Jan. 14, 1993), Aug. 4, 1995, attached as Exhibit E.
[39] *Id*.
[40] Second Amended Complaint, at ¶ 16.
[41] Order of Garnishment, *Greenebaum Treitz Brown & Marshal, P.S.C. v. Colyer*, Jefferson Circuit Court, No. 95-CI-01426, (Jeff. Cir. Ct. 1995), May 15, 1995, attached as Exhibit F.
[42] *Id*.
[43] *Id*.
[44] *Id*.

***The Carroll settlement.***  MetLife continued paying the Carroll garnishment until the Franklin Circuit Court set aside the garnishment in August 2006.[45]  MetLife made a $1,000 payment to Colyer the following month, but Carroll later moved the Franklin Circuit Court to set aside its previous order setting aside that garnishment.[46]  In response to the protracted and contentious litigation in the circuit court, MetLife withheld further annuity payments until resolution of the dispute between Colyer and Carroll.[47]  Nearly a year later, the Franklin Circuit Court reinstated the Carroll garnishment at a reduced rate of $650 per month.[48]  In November 2008, the Franklin Circuit Court further reduced the garnishment to $250 per month.[49]

On or around May 14, 2009, Colyer and Carroll reached a settlement concerning Carroll's garnishment of the annuity.[50]  Then-legal counsel for Colyer, in a letter to MetLife, directed MetLife to pay Colyer and Carroll equal lump sum payments of $16,000, which represented the entire amounts withheld by MetLife from October 2006 to June 2009 due to the litigation in the Franklin Circuit Court.[51]  For the remaining amounts due under the annuity, Colyer's then-legal counsel requested that MetLife pay Colyer $700 per month and Carroll $300 per month until Colyer's death or February 2033, whichever comes first.[52]  Colyer currently receives his annuity payments from MetLife via direct deposit to his checking account.[53]

---

[45] *Cf.* Second Amended Complaint, at ¶ 18; *see also* First Amended Complaint, at ¶ 18, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Oct. 7, 2010 [DN 10].

[46] First Amended Complaint, at ¶ 18; *see also* Motion to Set Aside, p. 3.

[47] Motion to Set Aside, p. 3.

[48] Second Amended Complaint, at ¶ 19.

[49] *Id*. at ¶ 20.

[50] Correspondence from Stephen R. Price to Ruth Susnick, May 14, 2009, attached as Exhibit G.

[51] *Id*.

[52] *Id*.; *see also* Second Amended Complaint, at ¶ 21.

[53] Motion to Set Aside, p. 4.

***Procedural background.***  Despite the garnishment payments on his behalf in accordance with the circuit court orders, the settlement agreement with Carroll, including being compensated for the entire amounts withheld by MetLife, and payment of the annuity in conformity with the structured settlement agreement, Colyer filed this suit against Travelers and MetLife on July 26, 2010.[54]  He initially alleged that the two entities were responsible for all annuity payments garnished under the Franklin Circuit Court's garnishment order.[55]  After legal counsel for Travelers provided Colyer's current legal counsel a copy of the settlement agreement with Carroll demonstrating that Colyer did receive annuity payments for October 2006 through June 2009, Colyer twice amended his Complaint.

Colyer then moved for default judgment against MetLife, which this Court set aside in September 2011.[56]  Afterwards, the parties exchanged written discovery between January and February 2012.  After the close of discovery on April 1, 2012, Colyer moved for summary judgment five days later.[57]  In his motion for summary judgment, Colyer seeks damages for annuity payments garnished between March 1993 and August 2006.[58]  But because those amounts were garnished in accordance with a valid garnishment order by the Franklin Circuit Court, which Colyer did not appeal, Travelers files this Motion for summary judgment in

---

[54] *See generally* Complaint, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Jun. 26, 2010 [DN 1].
[55] *Id.*
[56] Order ("Sept 9, 2011 Order"), *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Sept. 9, 2011 [DN 31], p. 3; *see also* Second Amended Complaint, at ¶ 1.
[57] *See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's Memo"), *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Apr. 6, 2012 [DN 51-1].
[58] Plaintiff Gary Colyer's Answers to Defendant The Traveler's Indemnity Company's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, Request for Admission No. 1, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Mar. 9, 2012, attached as Exhibit G; *see also* Plaintiff's Memo, p. 6.

accordance with Fed. R. Civ. P. 56, and asks that the Court deny Colyer's motion as a matter of law.

## STANDARD OF REVIEW

Summary judgment is proper when all that remains is a question of law for a court to decide.  Summary judgment must be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[N]ot every issue of issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  "The mere possibility of a factual dispute is not enough."  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citations and quotations omitted).  And while any ambiguities and evidence must be construed in the plaintiff's favor, the plaintiff "must present more than a mere scintilla of evidence in support of [his] position; the plaintiff must present evidence on which the jury could reasonably find for the plaintiff."  *Id.*

Last, although *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), holds that Kentucky state law provides the substantive law for this case, a federal court sitting in diversity applies the procedural standards of Fed. R. Civ. P. 56, not Kentucky's heightened state summary judgment standard from *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991).  *See, e.g.*, *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 459 (6th Cir. 1986); *see also Anderson v. Old Nat'l Bancorp*, 675 F. Supp. 2d 701, 707 (W.D. Ky. 2009).  In short, "[s]ummary judgment practice in federal courts is controlled by Rule 56, unaffected by state procedural rules."  *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 917 (6th Cir. 1982).

## ARGUMENT

Colyer's claims fail for four reasons.[59]  *First*, in order to grant Colyer relief in this case, this Court must do something that it is forbidden to do under the *Rooker-Feldman* doctrine: review and hold that a 20-year-old garnishment order entered by a state court violated state law. The allegations in the Second Amended Complaint leaves no doubt that declaring the 20-year-old garnishment order in violation of KRS 304.14-330, which exempts $350 of an annuity from garnishment, is an important – indeed, *necessary* – component of his claims.[60]  But since its inception, the *Rooker-Feldman* doctrine has prohibited district courts from exercising the type of appellate review of state court orders that Colyer seeks in this case.

*Second*, even assuming that Colyer could somehow overcome the jurisdictional bar of the *Rooker-Feldman* doctrine, his claims fail under the express terms of KRS 425.501(4) and longstanding Kentucky precedent, as this Court has already suggested in a previous order in this case.[61]  KRS 425.501(4) requires that a judgment debtor, such as Colyer here, raise his own statutory exemptions and defenses to a garnishment order.  Indeed, Colyer conceded in discovery that his then-legal counsel did not timely raise his statutory exemptions and defenses before the Franklin Circuit Court, as required by the statute.   Travelers had no responsibility for the omissions and inaction of Colyer's then-counsel.  And under well settled Kentucky precedent, Travelers had no *mandatory* duty to raise Colyer's statutory exemptions and defenses to the garnishment orders.  Colyer's reading of *Wentworth v. Jones* is simply wrong.[62]  In that case, the

---

[59]  Although MetLife is technically the garnishee, the Second Amended Complaint alleges that the structured settlement agreement to which Travelers is a contracting party, compels Travelers to act similar to a garnishee.  *See* Second Amended Complaint, at ¶ 25.  Accordingly, Travelers will argue as if it is a garnishee under the Franklin Circuit Court garnishment order.
[60]  Second Amended Complaint, at ¶ 17; *see also* Plaintiff's Memo, p. 6.
[61]  *See supra* note 56.
[62]  28 S.W.3d 309 (Ky. Ct. App. 2000).

Kentucky Court of Appeals held that a garnishee *may* have standing to raise statutory exemptions and defenses in a unique contractual circumstance that is neither present nor relevant here. *Wentworth* did not change nearly a century of Kentucky law.

*Third*, Colyer's claims for relief are also unprecedented in that he seeks to hold Travelers liable for complying with a valid, non-appealed court order.  The fact that compliance with a valid, non-appealed court order should absolve Travelers of any liability in this case is not only a matter of logic and common sense, but also a matter of doctrine under Kentucky law.  Travelers' compliance with the garnishment orders, which Colyer failed to timely appeal and waited nearly two decades to move the circuit court to set aside, is a complete defense to his claims for relief.

*Fourth*, Colyer's claims seek past annuity payments as damages even though those annuity payments were used to satisfy a judgment against him.  Colyer asks this Court to ignore Kentucky's "strong public policy against double recovery" to award him damages, despite the fact that Travelers, by complying with the garnishment, has provided him the benefit of satisfying Carroll's judgment against him.[63]  Although no Kentucky court has addressed this issue, courts from other jurisdictions, employing a similar "strong public policy against double recovery" as Kentucky, have rejected the notion that a judgment debtor can enjoy the dual benefit of a judgment against a garnishee and satisfaction of a judgment.

I.    **This Court is without subject-matter jurisdiction under the *Rooker-Feldman* doctrine to consider Colyer's claims because he seeks federal court review of a final state court decision.**

The *Rooker-Feldman* doctrine lays out a simple principle:  district courts have no subject-matter jurisdiction to hear "cases brought by state-court [*sic*] losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

---

[63] *Hardaway Management Co. v. Southerland*, 977 S.W.2d 910, 918 (Ky. 1998).

inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The U.S. Supreme Court has even explained the principle more succinctly: "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). As the U.S. Supreme Court has noted, the *Rooker-Feldman* doctrine has its genesis in statute. The doctrine "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court." *Saudi Basic*, 544 U.S. at 292.[64]

Colyer's claims directly clash with the well settled principle embodied in the *Rooker-Feldman* doctrine. An allegation central to the Second Amended Complaint is that "Carroll's garnishment in all respects failed to comply with the requirements of KRS 304.14-330."[65] This allegation also forms the basis of Colyer's summary judgment motion.[66] And discovery further reveals that the allegation is an essential part of his legal claim.[67] But for this Court to determine that the Franklin Circuit Court garnishment order was illegal, and somehow unenforceable, it would first have to compare and adjudicate the state court's garnishment order to the express terms of KRS 304.14-330. In essence, Colyer asks this Court to engage in *de novo* review of the Franklin Circuit Court's interpretation and application of KRS 304.14-330.

---

[64] Congress can, of course, explicitly authorize district courts to review state court judgments, as it did in the federal habeas statute, 28 U.S.C. § 2254(a).

[65] Second Amended Complaint, at ¶ 17.

[66] Plaintiff's Memo, p. 6.

[67] Plaintiff Gary Colyer's Answers to Defendant MetLife Insurance Company of Connecticut's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, Answer to Interrogatory No. 9, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Mar. 15, 2012, attached as Exhibit G ("[T]he garnishment exceeded the amount permissible under [KRS 304.14-330], and also the annuity was not owned by plaintiff and therefore should not have been subject to garnishment.").

But *de novo* review is the heart of the appellate function, and where final state court judgments are concerned, Congress left the task of reviewing those judgments to the U.S. Supreme Court, not district courts. *See United States v. Dedman*, 527 F.3d 577, 584-85 (6th Cir. 2008) (noting that "a court of appeals should review *de novo* a district court's determination of state law."); *see also Saudi Basic*, 544 U.S. at 292. And review by the U.S. Supreme Court of state court judgments can only come after appellate review by the state courts, which Colyer did not seek in regards to the Franklin Circuit Court garnishment order.[68] As the U.S. Supreme Court explained in *Feldman*, "[b]y failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court." *Feldman*, 460 U.S. at 483 n.16. The undisputed factual record of this case shows that it is no different. The *Rooker-Feldman* doctrine thus precludes this Court from exercising subject-matter jurisdiction over Colyer's claims.

**II.    Even if this Court had subject-matter jurisdiction, Colyer's claims should be dismissed because Travelers did not have a duty to contest or raise his statutory exemptions and defenses to the Franklin Circuit Court garnishment order under Kentucky law.**

Colyer's allegation that Travelers breached the settlement agreement because it failed to challenge the garnishment order entered against him in the Franklin Circuit Court has no basis in Kentucky law. Colyer's claim that Travelers failed to challenge the garnishment is based on KRS 304.14-330(1)(b). That statute exempts $350 per month from garnishment. KRS 304.14-330(1)(b). And here, Colyer seeks to impose liability against Travelers for failing to protect the statutorily exempt $350 per month from the garnishment order of the Franklin Circuit Court.

---

[68] Colyer did seek appellate review of the motions to set aside filed with the Franklin Circuit Court in 2008, but later dismissed his appeal after entering into the settlement agreement with Carroll. *See* Exhibit F. He did not appeal, however, the circuit court's original garnishment orders entered in 1995, which became final under state law after 10 days. *See* CR 59.05.

Yet Travelers did not fail to protect the statutorily exempt amount because it had no duty to do so under Kentucky law.   KRS 425.501(4) requires that when a garnishment order is entered, a judgment debtor must raise any statutory exemptions and defenses they are entitled to. KRS 425.501(4) states in part that:

> The judgment debtor may appear and claim the exemption of any property or debt that is exempt from execution . . . .

KRS 425.501(4); *see also Central Supply of Virginia, Inc. v. Commonwealth Life Ins. Co.*, 787 S.W.2d 273, 274 n.1 (Ky. Ct App. 1990).   Under KRS 425.501(4), then, Colyer had the duty to raise his statutory exemptions and defenses, not Travelers.

No less an authority than this Court recognized that KRS 425.501(4) places the onus on Colyer, not Travelers, to raise his statutory exemptions and defenses.   In the September 9, 2011 Order setting aside the entry of default against MetLife, **this Court** stated that "**Mr. Colyer** . . . was required to raise any statutory exemptions or defenses to the garnishment order."[69]   Colyer, moreover, does not dispute that he had a duty under KRS 425.501(4) to raise his statutory exemptions and defenses; as discovery showed, he left the task of raising his statutory exemptions and defenses to his "[legal] counsel at the time."[70]   The failure of his legal counsel to raise the statutory exemptions and defenses to the Franklin Circuit Court garnishment order is directly attributable to Colyer.   *See, e.g.*, *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634 (1962).   And because Colyer's legal counsel failed to raise the statutory exemptions and defenses to the garnishment order, Colyer alone incurs the loss for his failure to challenge that order.   This is what the express terms of KRS 425.501(4) command.

---

[69] Sept. 9, 2011 Order, p. 3 (emphasis added).

[70] Plaintiff Gary Colyer's Answers to Defendant The Traveler's Indemnity Company's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, Answers to Interrogatory Nos. 12, 15, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Mar. 9, 2012, attached as Exhibit H.

Travelers, at most, had only one obligation under the garnishment order:  to comply with it.  KRS 425.501(4), on the other hand, placed the duty on Colyer to raise his own statutory exemptions and defenses to the garnishment order entered by the Franklin Circuit Court.  Indeed, "[t]he rule in Kentucky has long been that an exemption may be claimed only by the debtor and not by another for his benefit."  *Central Supply*, 787 S.W.2d at 274 (citing *Holbrook v. Fyffe*, 175 S.W. 977, 979 (Ky. 1915)); *see also Sutherland Bros v. Stanley*, 63 S.W.2d 487, 489 (Ky. 1933) (garnishee cannot raise defense that judgment debtor does not owe the judgment creditor). This is because "[t]he garnishment statutes do not confer standing on the garnishee to claim an exemption of the judgment debtor." *Id*.

The Kentucky Court of Appeals' decision in *Wentworth*, upon which Colyer bases his entire summary judgment motion, did not modify or abrogate the general rule that garnishees have no standing under Kentucky law to raise a judgment debtor's statutory exemptions and defenses.[71]  In *Wentworth*, the garnishee only had standing to challenge the garnishment because it *voluntarily* raised the statutory exemptions to the garnishment at issue in that case.  *See Wentworth*, 28 S.W.3d at 312.  The garnishee did so to enforce a clause in a structured settlement agreement that prohibited the judgment debtors from contractually assigning annuity payments to a third party.  *See id*. at 314.

---

[71] *See* Plaintiff's Memo, p. 6.  *Wentworth*'s discussion of the public policy behind structured settlement agreements does not suggest that tort victims are forever immune from future judgments.  In *Wentworth*, the court of appeals explained that structured settlement agreements receive special tax consideration because they serve the purpose of providing "long-term financial security" to tort victims.  *Wentworth*, 28 S.W.3d at 313 (citing 26 U.S.C. § 104).  But Colyer is not just a mere tort victim; rather, he is a tort victim with two state court judgments entered against him.  And the General Assembly, by passing KRS 304.14-330, made a legislative determination that structured settlements, despite their purpose, can be garnished with a certain amount exempt.  By refusing to completely prohibit the garnishment of structured settlement payments, the General Assembly declared that payments made under structured settlements are to be treated substantially similar to any other asset that can be used to satisfy a judgment.

But Colyer's reliance on *Wentworth* here misses the mark; even assuming that Travelers had standing to invoke Colyer's statutory exemptions and defenses, *Wentworth* does not place a *mandatory* duty on Travelers to do so.  At most, *Wentworth* stands for the proposition that a garnishee *may* have standing to enforce a judgment debtor's statutory exemptions and defenses, particularly where the garnishee is responsible for responding to a series of long-term garnishments due to the judgment debtor's failure to abide by a structured settlement agreement. The case does not say that a garnishee, such as Travelers here, is required by law to raise a judgment debtor's statutory exemptions and defenses.  The entirely new idea that Travelers had a mandatory "duty to protect the Annuity Contract to fulfill its obligation to [Colyer]," is not a matter of precedent or statute; to the contrary, it is a matter of Colyer's own invention.[72]

At bottom, Colyer received notice of the Franklin Circuit Court garnishment order, had knowledge that the garnishment would consume the statutorily exempt amount, and never once requested that the garnishment be vacated or modified until 2006, more than a decade after the garnishment was first entered.[73]  Under these circumstances, no Kentucky court has ever held a garnishee liable for wrongful payment.  *See American* States, 662 S.W.2d at 853 (holding that garnishee was not liable for wrongful payment when debtor received notice of garnishment orders and failed to contest them).  And Colyer provides no basis for this Court to do so now.

**III.    Travelers is not liable for garnishment payments because the payments were made in accordance with a valid court order under Kentucky law.**

When a garnishee receives a garnishment order, "it is the duty of the garnishee to stand neutral in the litigation over the fund in his hands, to disclose all the information it has

---

[72] Plaintiff's Memo, p. 8.

[73] Plaintiff Gary Colyer's Answers to Defendant The Traveler's Indemnity Company's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, Answer to Interrogatory No. 13, *Colyer v. Traveler's Indemnity Co.*, Civil Action No. 6:10-cv-00175-GFVT (E.D. Ky. Jun. 26, 2010), Mar. 9, 2012, attached as Exhibit H.

concerning the fund to the court, and to hold the fund in readiness to abide by the decision of the court." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 633 (6th Cir. 2000) (citations and quotations omitted). "When [the garnishee] follows this course, [it] is entitled to the fullest protection." *Id*. Colyer alleges that Travelers breached the settlement agreement each and every month he did not receive a direct payment of $1,000 from the annuity.[74] But as the Sixth Circuit noted in *McMahan*, when payments are made in accordance with a garnishment order, the garnishee receives "the fullest protection," and therefore, cannot be held liable for non-payment. *McMahan*, 206 F.3d at 633.

The Kentucky Court of Appeals adopted a similar rationale in *American States*. In that case, a surety sued a bank for depleting the funds of an estate to pay a garnishment. *See American States*, 662 S.W.2d at 852. The question before the court was whether the bank, as the garnishee, could be held liable for complying with a valid garnishment order. *See id*. at 853 ("[W]as the bank, as the garnishee, absolved from liability because payment of the funds to the estate's judgment creditor was pursuant to the circuit court order of attachment?"). In rejecting the argument that a garnishee could be liable for complying with a valid court order, the court declared that "[o]ne is privileged to commit acts which would otherwise be a trespass to personal property or a conversion when the act is pursuant to a court order which is valid or fair on its face." *Id*. at 853; *see also In re Classicstar LLC,* Bankruptcy No. 07-51786, Adversary No. 09-5250, 2010 WL 724674, at *1 (Bankr. E.D. Ky. Feb. 24, 2010) (applying *American States*).

The protection afforded to garnishees in *American States* is not limited to actions involving trespass to personal property and conversion. In a later decision, the Kentucky Court of Appeals suggested that *American States* creates a general rule, without reference to the type of claim at issue. *Cf. Branch Banking Trust Co. v. Bartley*, No. 2004-CA-002663-MR, 2006 WL

---

[74] Second Amended Complaint, at ¶ 24.

1113632, at *3 (Ky. Ct App. Apr. 28, 2006) (bank not liable for wrongful garnishment for paying unsatisfied child support judgment in accordance with garnishment order). The protection of garnishees recognized in *American States*, therefore, applies to the breach of contract claims asserted here.[75]

Under KRS 425.516, moreover, a garnishee is discharged from liability to the judgment debtor to the extent the garnishee pays the debtor's judgment in accordance with a court order. KRS 425.516 provides that:

> The garnishee may pay the money owing to the defendant by him, not exceeding the plaintiff's claim and costs, to the sheriff having in his hands the order of attachment, or into the court or to such person as the court may direct in accordance with the Rules of Civil Procedure; and to that extent he shall be discharged from liability to the defendant.

KRS 425.516. In short, the statute essentially codifies the holding of *American States*.

For a valid court order, *American States* set forth three requirements that must be met: (1) the order must be regular in form; (2) it must be issued by a court having authority to issue the particular order and having jurisdiction over the personal property described in it; and (3) all proceedings required for the order's proper issuance must have duly taken place. *See American States*, 662 S.W.2d at 853. Once the garnishee establishes that it complied with a valid court order of garnishment, and that the judgment debtor received notice of the order, the garnishee is considered absolved of liability for wrongful payment. *Id*. The debtor is therefore left to assert his own statutory exemptions and defenses to the garnishment in accordance with KRS 425.501(4). *Id*.

The three requirements of *American States* are satisfied in this case. The garnishment issued by the Franklin Circuit Court was a valid court order; therefore, Travelers is absolved of

---

[75] Second Amended Complaint, at ¶¶ 22-33.

any possible liability for its compliance with that order.  The garnishment order was "regular in form," in that garnishments are a means of enforcing a judgment.  *See* 6 AM. JUR. 2d *Attachment and Garnishment* § 2 (Westlaw 2012); *see also* KRS 425.501(1).  The Franklin Circuit Court had authority to issue the garnishment orders under KRS 425.501(1), and jurisdiction over the annuity because payments were made primarily from a Travelers office based in Louisville, Kentucky.[76]   Colyer, moreover, had notice of the garnishment and did not challenge the jurisdiction or authority of the Franklin Circuit Court to enter the garnishment order on appeal.[77]

Last, the Franklin Circuit Court issued the garnishment after a trial on the merits.  *See* KRS 425.501(1).[78]  The garnishment payments here, then, were made in accordance with a valid court order.  Although Colyer alleges that the "garnishment[s] in all respects failed to comply with the requirements of KRS § 304.14-330," whether a garnishment order is ultimately legally correct has no relation to its validity.  *See Maness v. Meyers*, 419 U.S. 449, 458-59 (1974).  If there was any question about whether the Franklin Circuit Court properly issued the garnishment order, Colyer's recourse was to appeal in state court, not wait nearly two decades to seek relief from Travelers.

IV. **Granting Colyer relief in this case would constitute a double recovery and violate Kentucky's "strong public policy" against such recoveries.**

The relief requested by Colyer, in essence, would permit him to recover damages from Travelers, in addition to satisfaction of the judgments entered against him.  Colyer seeks each $1,000 annuity monthly payment garnished between April 1996 and August 2006 as damages.[79]

---

[76] *Cf.* Second Amended Complaint, at ¶ 2.

[77] *See supra* note 70.

[78] *See generally* Exhibit A.

[79] Plaintiff's Memo, p. 10.  The settlement agreement between Colyer and Carroll has rendered any claims for payments between October 2006 and June 2009 moot.  *See, e.g.*, *Michigan Bell Telephone Co. v. Engler*, 72 F. App'x 380, 384-85 (6th Cir. 2003).  In any event, Colyer does not seek damages for those payments.  *E.g.*, Second Amended Complaint, at ¶ 21.

19

But a damages reward for that amount would be on top of what has already been paid toward Colyer's creditors by Travelers through garnishment. In reality, Colyer seeks not $1,000 for each annuity monthly payment garnished, but double that amount. Nothing in the structured settlement agreement requires Travelers to pay what essentially amounts to $2,000 per month. While he argues that Travelers breached the structured settlement agreement, he ultimately seeks relief that is inconsistent with it. In the end, Colyer's claims seek a double recovery, and in Kentucky, "[t]here is a strong public policy . . . against double recovery for the same elements of loss." *Hardaway* Management, 977 S.W.2d at 918.

Kentucky courts have not addressed the relationship between garnishments and double recoveries, but the rationale of courts in other jurisdictions is persuasive. *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) ("If the state supreme court has not yet addressed the issue presented, this Court must predict how it would rule, by looking to 'all available data,' including state appellate decisions."). For example, a New Jersey appellate court held that the state's bar against double recoveries prevented debtors from recovering damages in addition to payments made under a tax levy, which the applicable law treated identical to garnishments. *See Dickstein v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 685 A.2d 943 (N.J. Super. Ct. App. Div. 1996) (applying New York law).[80]

In *Dickstein*, the debtors reached an agreement with the New York Compliance Bureau to pay a tax penalty in 1982. *Id.* at 945. But the debtors only paid a portion of the penalty, and after four years of sending collection letters, the Bureau sought and received a judgment for the remaining amount. *Id.* at 946. Afterward, the debtors opened a securities account with a New

---

[80] Under New York law, a tax levy is treated similar to a garnishment. *See Dickstein*, 685 A.2d at 562 ("Hence, defendants are entitled to the protection accorded a garnishee who pays a judgment creditor in satisfaction of an execution or court order from assets in which the judgment debtor has an interest"). (citing N.Y. CPLR 5209).

Jersey office of Merrill Lynch.  *Id*. at 945.  Two years later, Merrill Lynch received the tax levy

and satisfied the amount in full in accordance with New York law.  *Id*. at 946.  The debtors sued

Merrill Lynch for wrongful payment, and sought the full amount paid under the tax levy.  *Id*.

The trial court granted the debtors summary judgment, but the appellate court reversed.

The appellate court, most importantly, found that to award the debtors both damages and the

satisfaction of the tax levy would result in an unjust windfall:

> Plaintiffs here would be unjustly enriched by the motion judge's
> ruling. They received a benefit when the tax judgment was
> satisfied. To make defendants also pay for plaintiff's failure to
> contest the tax assessment would be unjust and in effect result in a
> windfall to plaintiffs. They would not only receive the benefit of
> the judgment against them having been satisfied, but also receive
> payment from the defendant who had satisfied that debt. Courts
> have the inherent power to prevent a potential double recovery or
> windfall.

*Dickstein*, 685 A.2d at 563-64 (citations and internal punctuation omitted); *see also Ench v.

Bluestein*, 145 A.2d 44 (N.J. Super. Ct. App. Div. 1958) (plaintiff not entitled to damages for

wrongful payment when defendant paid a debt for the plaintiff); *Harris v. Balk*, 198 U.S. 215,

226-27 (1905) (garnishee's payment of judgment held to be a complete defense to a subsequent

suit for wrongful payment), *overruled on other grounds by, Shaffer v. Heitner*, 433 U.S. 186

(1977).  So too here.

*Dickstein* recognizes another policy incentive that is relevant to this case.  Granting

Colyer relief here would encourage judgment debtors with structured settlement agreements to

avoid paying judgments entered against them.  *Cf. Dickstein*, 685 A.2d at 564 (discussing

incentives for taxpayers to ignore tax assessments if permitted double recovery).  A debtor could

purposely decline to pay a judgment, have a garnishee satisfy the judgment, and then seek

damages against the garnishee for wrongful payment.  This, in effect, would permit a debtor to

circumvent Kentucky's "strong public policy against double recovery" through financial gamesmanship.  *Hardaway*, 977 S.W.2d at 918.  For that reason, "it ought to be and it is the object of courts to prevent the payment of any debt twice over." *Harris*, 198 U.S. at 226.

## CONCLUSION

For the reasons above, Colyer fails to plead any basis for imposing liability against Travelers.  Accordingly, Colyer's claims must be dismissed because:  (1) this Court does not have subject-matter jurisdiction under the *Rooker-Feldman* doctrine; (2) Travelers had no duty to raise any statutory exemptions or defenses on Colyer's behalf; (3) the garnishment was paid in accordance with a valid garnishment order; and (4) Colyer requests relief that would constitute a double recovery contrary to Kentucky's "strong public policy" against such recoveries. Accordingly, Colyer's motion for summary judgment should be denied, and Travelers' motion for summary judgment granted.

Respectfully submitted,

s/Junis L. Baldon
John R. Crockett, III
Cory J. Skolnick
Junis L. Baldon
Frost Brown Todd LLC
400 West Market St., 32nd Floor
Louisville, KY 40202
PH:  (502) 589-5400
FX:  (502) 581-1087
jcrockett@fbtlaw.com
cskolnick@fbtlaw.com
jbaldon@fbtlaw.com

*Counsel for Defendant,*
*The Travelers Indemnity Company*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2012, I electronically filed the foregoing with the Clerk of the United States District Court of the Eastern District of Kentucky through the CM/ECF system, which will send a Notice of Electronic Filing to registered CM/ECF participants.

/s/ Junis L. Baldon
*Counsel for Defendant,*
*The Travelers Indemnity Company*

LOULibrary BT14081.0579534   1244899v2