UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| GARY COLYER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 10-175-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TRAVELER'S INSURANCE | ) | **&** |
| COMPANY, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Before the Court are the Cross-Motions for Summary Judgment filed by Plaintiff

Gary Colyer and Defendants, Travelers Indemnity Company and MetLife Insurance

Company of Connecticut.  In their respective motions, the parties assert that no questions

of fact exist and as a matter of law they are entitled to relief.[1]  For the reasons set forth

below, Colyer's Motion for Summary Judgment will be DENIED, and Defendants'

Motions for Summary Judgment will be GRANTED.

# I.

In November 1990, Colyer was injured in an automobile accident. [R. 42 at 3.]

Consequently, he filed suit in federal court against the other party involved in the

accident and his insurer, Travelers Insurance Company (Travelers). [*Id.*]  To resolve his

claims, Colyer entered into a Structured Settlement Agreement with Travelers. [R. 51-2

at 1.]  Under the Agreement, Colyer receives $1,000 "monthly for life or a maximum of

---

[1] On July 13, 2012, the parties filed a Joint Motion For Relief From Scheduling Order. [R. 65.]  Therein, they agree that this matter can be resolved by the Court on the Cross-Motions for Summary Judgment without proceeding to a Jury Trial. [*Id.* at 2.]

30 years." [*Id.* at 2.]  Travelers purchased an Annuity from Travelers Life and Annuity Company (now MetLife)[2]. [R. 42 at 3.]  These payments began in January of 1993. [*Id.*]

Not long after Colyer started receiving payments, he was sued by Julian Carroll for debts owed as part of a failed business venture between the two men. [*Id.* at 4.] Eventually, Carroll obtained judgment against Colyer for one-half the debt of the failed business in the sum of $79,391.28. [*Id.*]  In 1995, the Franklin County Circuit Court issued a garnishment order against MetLife. [*Id.*]  On April 5, 1996, MetLife began making payments to Carroll pursuant to the garnishment order. [*Id.*]  The April payment to Carroll was for $336.70, and from thereon he received $1,000 every month. [*Id.*]

Ten years later, a dispute arose between Colyer and Carroll regarding the garnishment order payments. [R. 53 at 3.]  In March 2006, Colyer filed a motion to set aside the garnishment order in Franklin Circuit Court. [*Id.*]  In August of the same year, the court granted that motion. [*Id.*]  Because the garnishment had been set aside, MetLife made one payment to Colyer in September. [*Id.*]  Later that same month, Carroll moved the court to vacate its order setting aside the garnishment. [*Id.*]  Pending resolution of the garnishment issues, MetLife suspended the Annuity payments from October 15, 2006, through May 15, 2009.  The suspended payments totaled $32,000. [*Id.*; R. 42 at 4.]

In May 2009, Colyer advised MetLife that he and Carroll reached a settlement of the issues giving rise to the garnishment. [*Id.* at 5.]  That settlement provided the $32,000 held by MetLife was to be evenly divided between Colyer and Carroll, and directed

---

[2] In 2005, MetLife, Inc. acquired part of Travelers, including subsidiary Travelers Life and Annuity Company, the issuer of the Annuity at issue here.  Then, Travelers Life merged into MetLife Insurance Company of Connecticut, a wholly owned subsidiary of MetLife, Inc.  Travelers Indemnity Company retained parts of the former Travelers and continued as an entirely separate company from MetLife.  As a result of the 2005 acquisition, Travelers Indemnity, as successor in interest to Travelers, became the owner of the Annuity with MetLife Insurance as issuer of the Annuity.  Although MetLife contends it is not liable for any Annuity payments before 2005, for purposes of this analysis this issue need not be resolved.

MetLife to make future monthly payments from the Annuity of $700.00 to Colyer and $300.00 to Carroll. [*Id.*]

Turning to this suit, which was filed in 2010, [R. 1] Colyer alleges Travelers breached the Settlement Agreement when it failed to pay him $1,000, and by failing to take any action to challenge or prevent garnishment of the Annuity. [R. 42 at 5.] Similarly, he avers that MetLife breached the Annuity Contract, between it and Travelers, when it failed to make the $1,000 payment. [*Id.* at 6.]  He also asserts MetLife breached the Annuity Contract by failing to take any action to protect the Annuity against the garnishment. [*Id.*]  Now, before the Court, are the parties' Cross-Motions for Summary Judgment.

## II.

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion

3

and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324).  Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact.  It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).  Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

### III.

#### A.

Colyer asserts that he is entitled to summary judgment because there are no factual disputes. [R. 51-1 at 11.]  He maintains Travelers breached the Settlement Agreement, and that MetLife is in breach of the Annuity Contract. [*Id.* at 12.] Accordingly, he asserts that they are both liable to him for $123,336.70 and pre-judgment and post-judgment interest. [*Id.*]  Defendants, on the other hand, argue they are not

responsible for Colyer's lost payments. [R. 53; R. 55.]  Specifically, Defendants contend

they made all payments in accordance with the garnishment order, and that in no way did

they have an obligation to assert any exemptions or defenses to it.

Without question, Colyer had the statutory authority to raise any defenses to the

garnishment of the Annuity.  According to KRS § 425.501, any person obtaining final

judgment in their favor may obtain an order of garnishment against persons holding

property "belonging to, or are indebted to, the judgment debtor…" KRS § 425.501(1).

The provision also explains that a "judgment debtor *may* appear and claim the exemption

of any property or debt that is exempt from execution, and on proof of exemption the

garnishment shall be discharged as to the exempt property or debt." KRS 425.501(4)

(emphasis added).  Upon information that the garnishee is indebted to, or holds property

of the judgment debtor, the court "shall order the property or the proceeds of the debt

applied upon the judgment." KRS § 425.501(5).  Additionally important, annuity

contracts enjoy the privilege of an exemption and it is expressly stated in KRS 304.14-

330.  The provision exempts from garnishment $350 per month. KRS 304.14-330(b)-(c).

Combined, these provisions make it possible for a plaintiff, who prevails over a

defendant in a legal matter, to garnish property or indebtedness to be received by the

plaintiff. *See* KRS 425.501(1), (4).  If, however, the property or debt is exempt from

garnishment, then the judgment debtor may assert such a claim so as to prevent its

garnishment, *id.,* which with respect to annuity contracts is $350, KRS 304.14-330(b)-(c).

Coyler acknowledges the existence of these provisions, but contends he did not have

ownership in the Annuity.  Instead, he asserts Defendants own the Annuity and had a

duty to challenge the garnishment.

According to *Central Supply of Virginia, Inc., v. Commonwealth Life Insurance Company*, 787 S.W. 2d 273 (1990), the law in Kentucky as it relates to garnishments "has long been that an exemption may be claimed only by the debtor and not by another for his benefit." 787 S.W. 2d at 274 (citing *Holbrook v. Fyffe*, 175 S.W. 977, 979 (1915)). There, Central Supply Company of Virginia obtained a judgment against Homer Osborne. *Id.* To satisfy its judgment, the company tried to garnish the cash surrender value of a life insurance policy issued by Commonwealth Life on Osborne. *Id.* Osborne did not claim any statutory exemption, but the insurance company resisted the garnishment claiming the cash value of the policy was exempt. *Id.* Recognizing Osborne had not exercised any right to an exemption, the appeals court reaffirmed the established rule, and concluded that neither KRS § 425.501 nor KRS § 425.516 "conferr[ed] standing on the garnishee to claim an exemption on the judgment debtor." *Id.*

Notwithstanding this established rule, Colyer asserts that a more recent case, *J.G. Wentworth v. Jones*, 28 S.W.3d 309 (KY. App. 2000), is controlling here. There, the appeals court revisited the question of raising statutory exemptions while "determin[ing] the validity of assignments to J.G. Wentworth and consequently the enforceability of Wentworth's orders of garnishment to collect the payments." 28 S.W.3d at 310.

In the 1980's, Integrity life insurance issued annuities to fund structured settlements to four tort-victims, all of which successfully litigated their claims against their respective defendants. *Id.* at 311. Years later, Wentworth purchased the rights to the annuity payments from the tort-victims in exchange for lump-sum payments. *Id.* at 312. When the tort-victims failed to assign their rights as they agreed, Wentworth brought suit in Pennsylvania, eventually obtained judgments against the annuitants, and then sought to

6

enforce the judgments in Kentucky by causing non-wage garnishments to be issued against Integrity and the entity responsible for issuing the annuities. *Id.* at 312. Integrity resisted the garnishments, arguing they were the only party with the right to assign the annuity payments. *Id.* After consolidation of the cases, a Kentucky trial court held Integrity, as owner of the annuities, "was the only party entitled or empowered to assign or re-direct the payments." *Id.*

On appeal, the appeals court ruled the tort-victims had no "ownership interest in the annuity contracts," and "had no interest susceptible of assignment." *Id.* at 314. Any interest obtained by Wentworth through its agreements with the tort-victims was illusory. *Id.* Only Integrity had the exclusive right to assign the agreements. *Id.* The court also commented on the public purpose of structured settlements, which it opined is to protect a class of injured plaintiffs after trial and damages are awarded "by extending that monetary umbrella over the span of their lives far into the future." *Id.* at 315.

Wentworth tried to evoke the *Central Supply* principle, arguing Integrity, as garnishee, had no standing to "assert that the proceeds destined to Wentworth's judgment debtors was exempt from execution." *Id.* Ultimately, though, the court sided with Integrity and the tort-victims. *Id.* It found *Central Supply* distinguishable because it involved a single payment of life insurance proceeds whereas in the case before it "Integrity was directly besieged by an ongoing barrage of continuing garnishments." *Id.* at 315-316.

This Court's review of those cases does not comport with the position taken by Colyer. Although *Wentworth* extends the right to assert the defenses of the annuitant to the owner of the annuity "besieged by an ongoing barrage of continuing garnishments",

*Wentworth*, 28 S.W. at 316, it does not stand for the proposition that the owner of an annuity has a duty or obligation, either implied or expressed, to assert the defenses afforded a judgment debtor.

Here, the Settlement Agreement entered into by Colyer and Travelers expressly states: "Travelers shall be the owner of any such annuity policy and shall have all rights of ownership," and "[t]he principal beneficiary of such annuity policy shall be [Colyer] although he shall not be the owner of the policy." [R. 51-2 at 3]  The judgment entered by the circuit court resulted in at least three separate orders of garnishment. [R. 55-3 at 6, R. 55-6, 55-7, 55-8.]  If the number of garnishments that exist is the deciding factor so as to distinguish a case from *Central Supply*, then perhaps *Wentworth* applies here. Nevertheless, *Central Supply* does not extend an affirmative duty to the garnishee.  At some point, if either Travelers or MetLife had decided to assert the defenses of the judgment debtor, Colyer, then according to *Central Supply* it could have, but under no such circumstances was it required to do so.

Also, particularly important to the ruling in this case is the Court's previous order wherein it was asked to set aside an entry of default. [R.31.] There, the Court remarked that MetLife had correctly observed "that Mr. Colyer, and not MetLife, was required to raise any statutory exemptions or defenses to the garnishment order. *See* K.R.S. 425.501(4)." [R. 31.]  Even if Colyer did not own the Annuity as he claims in his motion, there is no doubt that the proceeds paid out of it were for his benefit.  Persuant to  the Settlement Agreement, Colyer was entitled to compensation to be paid out of the fund over the course of 30 years, and payments made pursuant to such an agreement are a form of "indebtedness." *See Robbins v. Frank Fehr Brewing Co.*, 284 S.W.2d 680, 682

(Ky. 1955) (explaining that whether the "annuity was either an indebtedness maturing beyond a year, or was no indebtedness at all," depended on Robbins having been "in the employment of the company for at least a year.").

Moreover, unlike in *Central Supply* where Wentworth approached the tort-victims intending to secure the rights to their annuity payments, there are no sleight of hand concerns here. According to the circuit court, Carroll was entitled to relief from Colyer, and was obligated to pay contribution to Carroll for his part in the failed business venture. [R. 55-3 at 5-6.]

Equally unpersuasive is Colyer's breach of contract theory. He alleges he is a third-party beneficiary to the Settlement Agreement between Travelers and MetLife. He alleges Defendants "breached their duty under the Annuity Contract to [Colyer] when they acceded to the garnishment of annuity funds, without challenge, and failed to cause the full amount of the required payments to be made to plaintiff pursuant to the Settlement Agreement and the Annuity Contract." [R. 51-1 at 10.] Yet, to draw this conclusion, Colyer relies on a faulty premise: Defendants had a duty to stop the garnishment. The Court is unaware of any Kentucky law imposing such a duty.

In fact, Kentucky jurisprudence suggests otherwise. According to *American States Ins. Co. v. Citizens Fidelity Bank & Trust Co.*, 662 S.W.2d 851 (1983), "one is privileged to commit acts which would otherwise be a trespass to personal property or a conversion when the act is pursuant to a court order which is valid or fair on its face." 662 S.W.2d at 853. To be valid or fair, the order "(1) [] must be regular in form, (2) it must be issued by a court having authority to issue the particular order and having jurisdiction over the personal property described in it, and (3) all proceedings required for

its proper issuance must have duly taken place." *Id.*  When a person complies with a valid court order, compliance is privileged and does not result in any liability. *Id.*  Further, "the person who surrenders the property is under a duty to exercise reasonable care to give timely notice to the owner of the property, so the owner may have the opportunity to protect his interests." *Id.*

Although Colyer asserts that the "garnishments in all respects failed to comply with the requirements of KRS § 304.14-33," [R. 51-1 at 3] without evidence supporting this assertion the Court has no reason to believe that a valid court order does not exist. As the record indicates, the garnishment orders were regular in form and they were issued pursuant to KRS § 425.501, which established the circuit court's authority to issue the order and its jurisdiction over the Annuity. [R. 55-6, 55-7, 55-8.]  Moreover, if Colyer believes "[t]he annuity was not subject to garnishment, and the order was invalid on its face," then he is better off making such arguments in state court because "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Ultimately, without establishing either one of his claims against the Defendants, Colyer cannot succeed, and his summary judgment motion must fail.

**B.**

Given the breath of this analysis, the Court does not find it necessary to separately review the arguments made in Defendants' Motions for Summary Judgment.  Their arguments boil down to this: Colyer is not entitled to the relief he seeks because his claims fail as a matter of law.  The Court agrees with their position.  As has already been explained in the preceding analysis, Defendants breached neither the Settlement

10

Agreement nor the Annuity Contract because they owed no duty to Colyer to assert his defenses. Further, any payments not made to Coyler were the result of complying with a valid circuit court order. Without successfully establishing either one of his claims, Colyer is not entitled to recover.

## IV.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Colyer's Motion for Summary Judgment [R. 51] is **DENIED**;

(2)     Defendants' Cross-Motions for Summary Judgment [R. 53; R. 55] are **GRANTED**;

(3)     Further, the Joint Motion For Relief From Scheduling Order [R. 65] is **GRANTED**; and

(4)     Judgment will be entered contemporaneously and consistent with this Memorandum Opinion and Order.

This 30th day of July, 2012.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

11